IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:13-CR-310 |
| | ) | |
| EDGAR JAVIER BELLO MURILLO, | ) | The Honorable Gerald Bruce Lee |
| Also known as "Payaso," | ) | |
| | ) | |
| Defendant. | ) | |

FILED IN OPEN COURT
DEC 19 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## STATEMENT OF FACTS

Were this matter to go to trial, the United States of America would prove the following facts beyond a reasonable doubt with admissible and credible evidence:

1. On or about June 20, 2013, in Bogota, Colombia, a location outside the territory of the United States, the defendant, Edgar Javier Bello Murillo, also known as "Payaso," and his co-conspirators, Omar Fabian Valdes Gualtero, also known as "Gordo," Edwin Gerardo Figueroa Sepulveda, also known as "Garcho," Hector Leonardo Lopez, also known as "Bavario," Julio Estiven Gracia Ramirez, also known as "Steven," and Andrés Alvaro Oviedo Garcia, also known as "Flaco," also known as "Chino," each aiding and abetting the others, conspired to kidnap, and did unlawfully kill, with malice aforethought, Special Agent James Terry Watson, an internationally protected person, in violation of Title 18, United States Code, Sections 1116(a) and (c), 1201(c) and 2.

## DEA SPECIAL AGENT JAMES TERRY WATSON

2. James Terry Watson was a Special Agent (Special Agent Watson) with the Drug Enforcement Administration (DEA), an agency of the United States Government.

3. Special Agent Watson was hired by the DEA as a full-time employee serving as a

1



Case 1:13-cr-00310-GBL   Document 258   Filed 12/19/14   Page 2 of 7 PageID# 1495

Special Agent in June 2000. After serving in DEA's Honolulu District Office, Caribbean Division, and Foreign-deployed Advisory Support Team, Special Agent Watson was assigned to DEA's Cartagena, Colombia Resident Office in July 2010.

4. Prior to working for DEA, Special Agent Watson served as a Sheriff's Deputy with the Richland Parish Sheriff's Office, and as a Deputy United States Marshal in the Southern District of Mississippi.

5. Special Agent Watson was a United States citizen, born on December 9, 1970 in Monroe, Louisiana.

6. In July 2010, Special Agent Watson was accredited by the United States Government and the Government of Colombia as an Assistant Attaché for the United States Mission in Colombia. He maintained this title until his death. As an Assistant Attaché, a diplomatic agent of the United States, Special Agent Watson was an Internationally Protected Person.

## THE CONSPIRACY TO CONDUCT "MILLIONAIRE'S RIDE" ROBBERIES

7. Gualtero, Sepulveda, Lopez, Ramirez, Oviedo-Garcia and the defendant were members of a conspiracy to conduct "paseo millonario" ("millionaire's ride") robberies in Bogota, Colombia. The conspirators operated taxi cabs in Bogota, Colombia in order to lure victims. The conspirators selected their victims, including Special Agent Watson, based on their perceived wealth. The defendant participated in approximately 12 previous "paseo millonario" robberies. The conspirators' victims included Colombian citizens, as well a citizen of El Salvador and a citizen of the United States.

8. The defendant and some of the defendant's conspirators would arm themselves with knives, tasers, chemical sprays, and other weapons in order to intimidate or gain compliance from their victims.

9. Once an intended victim entered into a taxi cab operated by one of the conspirators, the driver of the taxi cab would signal the others to commence the robbery and kidnapping operation.

10. After one of the conspirators provided the signal, other conspirators in a second taxi cab would pull up behind the taxi cab containing the intended victim, and conspirators from the second taxi would enter the rear seat of the taxi cab containing the victim.

11. The conspirators would hold the victim in the back of the cab by force and threat of force, and would rob the victim of his or her valuables, including credit and bank cards and other valuables. While holding and detaining the victim, the conspirators would obtain the victim's personal identification numbers (PINs) for the bank and credit cards by force and threat of force.

12. A conspirator operating a third cab would pull behind the other taxi cabs to assist his conspirators in the first and second taxi cabs, including to serve as a look out, block other traffic, and, in some instances, take possession of the victim's credit and bank cards.

13. A conspirator, using the third cab, would drive from bank to bank attempting to withdraw as much currency as possible from the victim's bank or credit accounts. If the victim failed to provide correct PINs, the conspirators that remained with the victim would use additional force to obtain correct PINs from the victim.

14. After the robberies, the defendant took certain items that were stolen from the victims, such as cell phones and computers, to a third party to sell the items.

### THE KIDNAPPING AND MURDER OF SPECIAL AGENT WATSON

15. On or about June 20, 2013, in Bogota, Colombia, the conspirators set out to conduct "paseo millionario" robberies. Earlier in the day, Sepulveda and Lopez used funds obtained by selling stolen property from prior robberies to purchase a taser (an electroshock weapon) and acid

spray with the purpose of using the weapons during the "paseo millonario" robberies they planned to conduct. Lopez spent part of June 20, 2013, charging the taser's batteries. On the evening of June 20, 2013, Lopez gave the taser to Sepulveda, with the understanding that Sepulveda would use the taser to subdue those robbery victims who were not compliant with the conspirators' demands. The defendant brought his own knife to be used during the "paseo millonario" robberies that night.

16. The conspirators planned to use three taxis to conduct the robberies, but before the conspirators picked up Special Agent Watson, one of the taxis encountered mechanical issues. Oviedo-Garcia remained with the disabled taxi, while the defendant and the other conspirators continued with the group's plan to conduct "paseo millonario" robberies. The defendant rode as a passenger in the second cab, which was driven by Lopez and also carried Gualtero and Sepulveda. The defendant and Sepulveda were to enter the first cab, rob the victims of their valuables and bank cards, and detain the victims until their bank cards could be used. Gualtero and Lopez were to remain in the second cab, receive the stolen bank cards, and use them at various banks to take out money.

17. Ramirez drove the first taxi, targeted Special Agent Watson for a "paseo millonario," and picked up Special Agent Watson in his taxi. Ramirez traveled a short distance and then pretended to have mechanical issues with the taxi and stopped. Lopez stopped the second taxi behind the first taxi to allow the defendant and Sepulveda to exit his taxi. The defendant and Sepulveda entered the first taxi, one on each side of Special Agent Watson. Sepulveda used the taser to shock Special Agent Watson. The defendant stabbed Special Agent Watson with a knife at least four times. Special Agent Watson was able to escape from the conspirators' custody. He soon collapsed and was brought to the hospital, where he was declared dead. He died from blood loss resulting from multiple stab wounds.

18.  During the struggle, the defendant heard Special Agent Watson yell "No!" in what he perceived to be an American accent. The defendant and Sepulveda were able to secure a backpack that Special Agent Watson left in the taxi when he escaped. The backpack contained several passports issued by the U.S. government. Shortly afterwards, the defendant discarded the backpack and its contents.

19.  This statement of facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not include each and every fact known to the defendant or the government, and it is not intended to be a full enumeration of all of the facts surrounding the case.

## CONCLUSION

20.  The actions of the defendant as recounted above were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

21.  The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

Dana J. Boente  
United States Attorney

Leslie R. Caldwell  
Assistant Attorney General  
Criminal Division

By: _____  
Michael P. Ben'Ary  
Assistant United States Attorney

By: _____  
Stacey Luck  
Special Counsel  
Human Rights and Special Prosecutions Section

5

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
EDGAR JAVIER BELLO MURILLO
Defendant

Defense Counsel's Signature

I am the attorney for EDGAR JAVIER BELLO MURILLO. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

_____
John C. Kiyonaga, Esq.
Counsel for the Defendant